**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROBIN ST. CLAIR,**

**Plaintiff,**

-vs-                                                    Case No.  **6:05-cv-1505-Orl-31DAB**

**FMC TECHNOLOGIES, INC.,**

**Defendant.**

_____

# ORDER

The Plaintiff, Robin St. Clair ("St. Clair"), alleges that Defendant, FMC Technologies, Inc.

("FMC"), has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title

VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").  This

matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 36) and St.

Clair's opposition thereto (Doc. 41).

## I. Background

St. Clair, an African-American  female, was employed by FMC from April 28, 1986 to

April 4, 1997, when she left the company to pursue her Bachelor's degree. (Doc. 1 at 1, Doc 37-2

at 13).[1]   In February 2004 Plaintiff returned to Defendant's employ with, according to St. Clair, a

promise from management that her years of service would be restored so that she would not lose

seniority. (Doc. 1 at 2, Doc 37 at 2).  Plaintiff's position was known as "Buyer, Grade 15." (Doc.

---

[1]The depositions filed at Doc. 37 are formatted such that four deposition pages appear on a
single document page. Therefore, page references to Doc. 37 refer to the page number of that
document, rather than the page number of a deposition transcript.

37 at 2).  On October 14, 2004, St. Clair received a letter from Defendant stating that her position was being eliminated as part of a "reduction-in-force" plan and that her termination was effective immediately. (Doc. 1-2).  This letter indicated that Plaintiff's termination was not the result of poor performance but instead due to "current business conditions." (Doc. 1-2).  At the time, Defendant had three Grade 15 Buyers working in its Orlando office. (Doc. 37 at 3).  Two of those Buyers were laid off: St. Clair and Haydee Valderrama ("Valderrama") (an Hispanic female, age 47). The third Buyer, Andy Krisch ("Krisch") (a white male, age 34), was retained. (Doc. 37-4 at 41-43).

Plaintiff contends that her position was not actually eliminated, but that she was instead immediately replaced with a younger, white male, John Pierce ("Pierce"). (Doc. 1 at 2, Doc. 37-2 at 19).  Defendant responds, however, that St. Clair's position was eliminated completely and that nobody has replaced her. (Doc. 37 at 3-4).  Plaintiff also contends that the decision to terminate her was based on illegal race, gender and age discrimination. (Doc. 1).  Defendant states that the decision regarding which Buyer to keep and which to lay off was motivated by job history and performance. (Doc. 37 at 6-8).

## II. Standard of review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929

F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

      When a party moving for summary judgement points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

      The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

### III. Legal Analysis

A. Title VII

To establish a *prima facie* case of employment discrimination under Title VII, the Plaintiff must meet the *McDonnell Douglas* test[2] by showing: (1) that she is a member of a protected class, (2) that she is entitled to or qualified for the position, (3) that she suffered an adverse employment action, and (4) that she was treated less favorably than similarly situated employees who are not members of her protected class. *Hanley v. Sports Authority,* 143 F.Supp.2d 1351, 1355-6 (S.D. Fla. 2000) (citing *Holifield v. Reno,* 115 F.3d 1555 (11th Cir. 1997)).[3]   However, the fourth element has been modified to better fit the circumstances involved in reduction-of-force cases:

> In reduction-of-force cases, the fourth element may be satisfied by showing "that *persons outside the protected class were retained in the same position* or that there was some other evidence indicating that the employer did not treat [the protected classification] neutrally in deciding to dismiss the plaintiff."

*EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992) (citations omitted and emphasis added).

Establishment of a *prima facie* case of discrimination creates a rebuttable presumption of discrimination in favor of the Plaintiff.  The burden of production then shifts to the Defendant "to articulate some legitimate nondiscriminatory reason" for the employer's actions. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996).   Once the Defendant has offered a nondiscriminatory explanation for its decision, the presumption of illegal discrimination is

---

[2]*See McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973).

[3]The Defendant stipulates, for purposes of this Motion, that Plaintiff meets the first three prongs of this test. Only the fourth one is contested.

destroyed.  The burden then falls on the Plaintiff to show that the employer's explanations are

merely pretextual.  *See McDonnell,* 411 U.S. at 804.

> The plaintiff retains the burden of persuasion. She now must have the opportunity to
> demonstrate that the proffered reason was not the true reason for the employment decision.
> This burden now merges with the ultimate burden of persuading the court that she has been
> the victim of intentional discrimination. She may succeed in this either directly by
> persuading the court that a discriminatory reason more likely motivated the employer or
> *indirectly by showing that the employer's proffered explanation is unworthy of credence.*

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981) (emphasis added).

Plaintiff is not required to produce evidence of specific acts or statements showing

discriminatory intent on the part of the employer. *See Combs v. Plantation Patterns, Meadowcraft,*

*Inc.,* 106 F.3d 1519, 1538 (11th Cir. 1997)   "A plaintiff in a discrimination case based on

circumstantial evidence can avoid judgment as a matter of law by putting on a *prima facie* case

and by producing evidence sufficient to discredit in the mind of a reasonable juror all of the

defendant's proffered nondiscriminatory reasons for its actions."  *Id*.

> [O]nce the district court determines that a reasonable jury could conclude that the
> employer's proffered reasons were not the real reason for its decision, the court may not
> preempt the jury's role of determining whether to draw an inference of intentional
> discrimination from the plaintiff's prima facie case taken together with rejection of the
> employer's explanations for its action. At that point, judgment as a matter of law is
> unavailable.

*Id.*

In this case, there are significant factual disputes regarding the fourth element in Plaintiff's

case.  Plaintiff contends that her position was retained after she was fired and was given to Pierce,

one of her younger, white, male colleagues.  Defendant contends in its motion that her position

was eliminated.  However, Defendant's own witness, Global Sourcing Manager Michael Houlihan

("Houlihan"), is not so sure, having given contradictory answers at deposition.

       From Houlihan's February deposition:

       Q: Was Ms. St. Clair's position eliminated in October of 2004?

       A: Yes

       Q: Completely eliminated?

       A: Yes

(Doc. 37-3at 13).

       From Houlihan's May deposition:

       Q:Was Robin St. Clair's job title eliminated?

       A: No.

       Q: Was Robin St. Clair's position eliminated?

       A: No.

(Doc. 37-4 at 4).

       Additionally, Defendant's "Reduction-In-Force Form 6" indicates that no job titles were

"completely eliminated."(Doc 37-4 at 35).  The issue of whether St. Clair's position was

eliminated is a disputed question of fact and, therefore, summary judgment is inappropriate in this

case.

       Defendant argues that even if Plaintiff meets all four elements of the prima facie case, she

has been unable to show that its explanations for her termination were pretextual.  However,

Plaintiff need only cast doubt on such explanations so that a reasonable juror may decide that they

deserve no credence. *Combs,* 106 F.3d at 1543.  The inconsistencies in Defendant's proffered

justifications are sufficient to do so. In Defendant's response to Plaintiff's interrogatories,

Defendant states that the elimination of Plaintiff's position "did not relate to her work

performance." (Doc. 41-3 at 9).  However, Defendant's motion spends pages discussing how St.

Clair's job performance was evaluated and compared to Krisch's in making the decision as to

which positions to eliminate.  (Doc. 37 at 5-9).  Furthermore, Houlihan, who apparently played a

large role in the decision to terminate St. Clair, could not decide in his depositions whether St.

Clair's job performance was satisfactory or not. (Doc. 37-3 at 11).

> From. Houlihan's February deposition:
>
> Q: Was there anything about the way Robin worked that met with your disapproval?
>
> A: No.

(Doc. 37-3 at 10).

> From Houlihan's May Deposition:
>
> Q: Would it be fair to say that you were dissatisfied with Robin St. Clair's failure to use e-bidding technology?
>
> A: Yes
>
> . . . Q: Did your displeasure on that subject contribute to your decision to end Robin St. Clair's employment with FMC?
>
> A: Yes.

(Doc. 37-4 at 3).

Certainly, when a Defendant is as inconsistent, evasive and uncooperative during a

deposition as Houlihan was in this case, a reasonable jury could find that any explanations given

are mere pretext and suspect illegal discrimination.[4]

---

[4]In addition to giving the conflicting answers shown above, several times during deposition Houlihan pretended not to understand simple English.  For example, at Houlihan's February deposition, the following exchanges took place:

Q: And during that time, did you become generally familiar with Robin St. Clair's work?
A: What do you mean by "familiar"?
Q: Well, did you know her well enough to begin to form opinions as to the quality of employee that she was, the type of work she did, those sorts of things?
A: No.
Q: Those interactions that you had with her between 1997 and 1999, were they -- could you describe them more as small talk, friendly shop talk, or more directly related to the performance of her
(continued...)

Assuming that a jury decides Plaintiff's position was in fact eliminated, there is still the issue that Defendant terminated only two out of the three Grade 15 Buyers. (Doc. 37 at 3).   The Buyer that Defendant retained was outside the protected class. (Doc 37-4 at 43).  Defendant has offered several explanations for this decision, but it will be up to a jury to decide whether to credit them.  As discussed above, it is unclear whether Defendant's decision was based on Plaintiff's job performance or not.  Also, Houlihan alleged that St. Clair's failure to use e-bidding was one of the reasons for her termination, but Plaintiff asserts that she did use e-bidding. (Doc. 37-4 at 3, Doc.

---

[4](...continued)
corporate duties or your corporate duties?
A: Could you explain what you mean by corporate duties?
Q: You said you weren't really familiar with Robin St. Clair's work during that time; is that correct?
A: My question was, what did you mean by corporate duties? I don't --
Q: I'm getting to that, sir. You stated that you weren't really familiar with Robin St.Clair's work between '97 and '99, correct?
A: What do you mean by "familiar"?
(Doc. 37-3 at 4) (objections omitted).

Q: When you applied for the global sourcing manager position, were you aware that if you obtained that position, you would be Robin St. Clair's supervisor?
A: Yes.
Q: How did you feel about that at that time? Did you have a generally -- well, she's going to object to the form, so I'll just leave the question as stated. How did you feel about that at that time?
A: What do you mean by "feel"?
(Doc. 37-3 at 5) (objection omitted).

Q: During the time that you were Robin's supervisor and you were working together, did you have any problems with Robin's performance?
A: What do you mean by "problems"?
Q: Were there deficiencies in her work performance which came to your attention?
A: Could you explain "deficiencies"?
Q: Was there anything about the way Robin worked that you didn't like?
A: What do you mean by "like"?
(Doc. 37-3 at 9) (objections omitted).

41-4).  These factual disputes relate to the credibility of Defendant's proffered reasons for its decision and should be decided by a jury.

B. ADEA

Plaintiff also contends that she was discriminated against on the basis of her age. Claims of discrimination based on age under the ADEA must also meet the *McDonnell Douglas* test described above, with one slight modification: plaintiff need not show that she was discriminated against in favor of someone *outside the protected class* (under 40 years of age), but only in favor of someone younger than her.  *See O'Connor,* 517 U.S. at 311-2.  However, the age difference cannot be insignificant.

> [T]he *prima facie* case requires "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion . . . ." In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

> *Id.* at 312-3. (internal citations omitted).

The same factual disputes exist with regard to this claim as with the Title VII claims of race and gender discrimination.  Again, it is for a jury to decide whether St. Clair's position was in fact eliminated and whether the decision to retain Krisch, who was 34 years old at the time, and terminate St. Clair, then age 46, was based on impermissible, discriminatory considerations. (Doc.

37-4 at 43).  Although the age difference between St. Clair and Pierce is only four years,[5] in the

Eleventh Circuit, a mere three-year age difference is sufficient to establish a prima facie case of

age discrimination. *See Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997).

Therefore, this is not a case where the age difference is insignificant as a matter of law.

**IV. Conclusion**

For the reasons stated above, summary judgment is inappropriate in this case.

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 36) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 23, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[5]At the time of her termination, Plaintiff was 46 and Pierce was 42. (Doc. 37-5 at 4-5).